UNITED STATES, Appellee

v

FRED R. REYNOLDS, Airman Basic, U. S. Air Force, Appellant

16 USCMA 403, 37 CMR 23

*Lieutenant Colonel Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel William F. Rutherford* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Tried by special court-martial, Airman Reynolds was found guilty of absence without leave, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886, and wrongful appropriation, in violation of Code, supra, Article 121, 10 USC § 921. He was sentenced to bad-conduct discharge, forfeiture of $83.00 per month for six months, and confinement at hard labor for six months. Intermediate appellate authorities affirmed, and we granted his petition for review upon the assignment that:

"THE ACCUSED'S PRETRIAL CONFESSION TO WRONGFUL APPROPRIATION WAS INADMISSIBLE BECAUSE THE AIR POLICE INTERROGATOR WHO SUSPECTED HIM OF THE OFFENSE DID NOT ADVISE THE ACCUSED THAT HE WAS SUSPECTED OF THAT OFFENSE."

Basically, the evidence establishes accused and Airman Yost left a work detail on October 29, 1965, at Travis Air Force Base, California, and determined to absent themselves without authority. Shortly thereafter, a Lieutenant Colonel Parker discovered his automobile was missing from a nearby parking lot. The automobile was later found in Yosemite National Park and retrieved from there by Colonel Parker. The accused and Airman Yost were apprehended by civilian police officers in Roosevelt, Utah, on October 31, 1965, and returned to military control.

A pretrial statement obtained from Airman Reynolds by Air Police Investigator Carbone indicates Reynolds and Yost drove Colonel Parker's car from the Base to Yosemite and abandoned it there. It is this evidence which forms the basis of our grant.

At the trial, Carbone testified that, prior to obtaining the statement, the accused was advised of his right to remain silent and that any statement he made might be used in evidence against him in a trial by court-martial. Prior to such warning, Carbone identified himself as an investigator and neither made threats, offers of leniency, nor used any coercive measures to obtain accused's cooperation. However, although he suspected Reynolds of taking Colonel Parker's car, he did not so advise him, contenting himself with the statement "that I was interested in his activities over a period of from the 29th of October until the 31st, inasmuch as I was interested in what his activities were from the time he departed the base until the time that he was apprehended at Roosevelt, Utah."

At the time of the interrogation, Carbone was aware "the taking of this automobile was a separate and distinct offense from the activities" he was investigating, but considered his general inquiry into accused's behavior while absent impliedly advised him that he was also suspected of misappropriating the vehicle.

Over objection by the defense counsel that Carbone's advice concerning the nature of the offense of which he suspected accused was inadequate, the president of the court received the statement in evidence.

II

Code, supra, Article 31, 10 USC § 831, provides pertinently:

"(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense *without first informing him of the nature of the accusation* and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

. . . . . .

"(d) No statement obtained from any person in violation of this article, . . . may be received in evidence against him in a trial by court-martial." [Emphasis supplied.]

On the face of the record, it is apparent Investigator Carbone did not comply with the terms of ■ Code, supra, Article 31, before interrogating the accused. Thus, he frankly admitted he made no effort to inform Reynolds that he was suspected of taking Colonel Parker's car, although he believed Reynolds to have done so. He further admitted he knew this to be a separate and distinct crime from that into which he was ostensibly inquiring, but considered he sufficiently advised accused by limiting the inquiry to the period of unauthorized absence involved. That such is insufficient to inform accused "of the nature of the accusation" against him and thereby deprive him of any meaningful choice concerning whether to speak or remain silent is patent.

Nonetheless, the United States, relying on several of our past decisions, contends Carbone's advice and inquiry was sufficient to orient accused to the scope of the interrogation and inform him that he answered any questions concerning the limited time involved at his peril. But the statute does not speak in terms of drawing the accused's attention to a time period or having him discuss all his activities therein. It clearly and unmistakably requires that he be informed "of the nature of the accusation." Code, su-

pra, Article 31(b). And the Congressional inclusion of this requirement seems clearly to have been designed so to orient an accused or suspect as to allow him intelligently to weigh the consequences of responding to an investigator's inquiries. See, generally, Hearings before House Armed Services Committee on HR 2498, 81st Congress, 1st Session, page 990.

Nor do our prior cases support the views of the Government that orientation concerning the period of time involved suffices to comply with the positive mandate of Code, supra, Article 31. True it is that we have frequently pointed out it is not necessary to spell out the details of accused's alleged misconduct with technical nicety in order adequately to inform him of the nature of the charge being investigated. See, for example, United States v Johnson, 5 USCMA 795, 19 CMR 91; United States v Rice, 11 USCMA 524, 29 CMR 340; and United States v Nitschke, 12 USCMA 489, 31 CMR 75. It suffices if the accused is made aware of the general nature of the allegations involved. United States v Dickenson, 6 USCMA 438, 20 CMR 154; United States v Davis, 8 USCMA 196, 24 CMR 6. This simply means that neither this Court, nor Congress in enacting Code, supra, Article 31, expected a police officer to use the precision of an attorney or pleader in informing the accused of the subject matter of his interrogation. The statute requires only "the *nature* of the accusation" to be disclosed—not that it "be spelled out with the particularity of a legally sufficient specification." (Emphasis supplied.) United States v Davis, supra, at page 198. Hence, it would have been enough here for Investigator Carbone to have drawn accused's attention to the taking of Colonel Parker's automobile, without specific reference to the technical terms "larceny" or "wrongful appropriation." This is the sort of orientation of which we have previously spoken, and such was the meaning of Congress when it enacted Code, supra, Article 31. And it is obvious that asking an accused what he has done over a three-day period does

not inform him of the nature of the accusation which is being investigated.

We conclude, therefore, that the accused's statement was obtained without proper advice under Code, supra, Article 31, and was, therefore, inadmissible in evidence against him. Code, supra, Article 31(d).

### III

Conceding, *arguendo,* that Carbone's failure to inform the accused of the nature of the accusation against him was erroneous, the Government next contends the lack of advice was nonetheless nonprejudicial. It urges that, as accused was engaged in a course of criminal conduct, it is inescapable that he knew full well the crimes of which he was suspected. Moreover, it points to the language of the late Judge Brosman, in United States v O'Brien, 3 USCMA 105, 11 CMR 105, to the effect that, while the failure to advise an accused or suspect of the nature of the offense involved might be error, "it is at the same time one which will be deemed prejudicial in only the rare and unusual case."

We cannot agree with the Government's conclusion of lack of prejudice or the basis therefor. First, its reasoning that accused must have known the subject of the policeman's inquiry since he in fact committed the crimes involved is circuitous. It ignores the presumption of innocence and uses the improperly obtained evidence to justify the failure to comply with applicable law in obtaining it. We have consistently rejected this approach in the past. See United States v Mounts, 1 USCMA 114, 119, 2 CMR 20, 25; and United States v Knight, 12 USCMA 229, 30 CMR 229. We likewise here refuse to accord effect to the notion that "an item of evidence . . . [can] raise itself to the level of admissibility by its own bootstraps." United States v Mounts, supra, at page 119.

We likewise reject the implication of Judge Brosman's language in United States v O'Brien, supra. In retrospect, the observation was unnecessary, for,

as the Court there found, O'Brien "knew full well [at the time of his interrogation] that he was suspected of the homicide of his wife." *Id.,* at page 109. It, therefore, can scarcely be considered to have precedential value. Moreover, as we have noted, Code, supra, Article 31, expressly requires an accused to be informed of the nature of the accusation under investigation as well as his right to remain silent. It further declares, without equivocation, that statements obtained in violation of its terms are not to be received in evidence. Code, supra, Article 31(d). The language is clear and unambiguous. Congress determined to lay down certain requirements for the obtaining of pretrial statements. See, generally, House Hearings, supra, page 990, *et seq.* If these requirements are not met, the statement is not to form a portion of the proof against the accused.

This Court long ago interpreted this prohibition against the receipt of improperly obtained pretrial statements to require reversal if the requirements of Code, supra, Article 31, were violated. United States v Wilson, 2 USCMA 248, 8 CMR 48; United States v Duffy, 3 USCMA 20, 11 CMR 20. We have consistently adhered to this viewpoint throughout the years. See United States v Tanner, 14 USCMA 447, 34 CMR 227. We find no basis on which to distinguish the requirement for one facet of the necessary warning from any other portion thereof. Hence, once the failure to advise an accused of his rights is established, and a subsequent confession's inadmissibility shown, we believe prejudice is demonstrated by its use against him, without regard to the state of the record otherwise. United States v Wilson, supra; United States v Tanner, supra; and see Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966).

In sum, then, we conclude the statutory duty to advise an accused or suspect of the nature ·of the accusation being investigated was not here met by a general inquiry as to what Airman Reynolds had done during a period of three .days' unauthorized ab-

sence. Hence, his ensuing statement was obtained in violation of Code, supra, Article 31, and, as it was nevertheless admitted, over his proper objection, and used as proof of his guilt, we find present error prejudicial to his substantial rights. Reversal, therefore, is required.

The findings of guilty of wrongful appropriation and the sentence are set aside. The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Air Force. The board may reassess the sentence on the basis of the findings of guilty of absence without leave or order a rehearing on the charge of wrongful appropriation and the penalty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

I would not recommend Sergeant Carbone's action as a model for police interrogation of a suspect, but I cannot condemn it as violative of Article 31 of the Uniform Code of Military Justice. The accused is an adult, not a callow youth. He had departed from his unit without authority and had been apprehended by civilian police. While incarcerated in a civilian jail, Sergeant Carbone came to talk to him. Obviously, he had hardly come for a casual conversation about the accused's activities during his unauthorized absence. He identified himself to the accused as an Air Police criminal investigator, and read Article 31 "verbatim" to the accused. True, he did not spell out each offense of which the accused was suspected, but he informed the accused that his purpose was to conduct a "criminal investigation" into his activities from his unauthorized departure on October 29th until his apprehension on October 31st. He also advised the accused that anything he said about his activities could be used against him in a trial by court-martial.

Without contradiction or impeachment, Sergeant Carbone testified his remarks "implied" he was interested in the accused's wrongful appropriation of the car. Of course, Carbone's understanding of his own remarks does not mean that the accused necessarily understood them in the same way. However, when the speaker's language is ambiguous, the surrounding circumstances may indicate that the listener attributed the same meaning to the language as the speaker. United States v Mitchell, 6 USCMA 579, 20 CMR 295. Here, the accused's attention was specifically directed to his unauthorized departure from the Base and to his apprehension at a distant city. It seems to me that fairly implied in Carbone's remarks is an indication that Carbone wanted to know about the criminal means the accused used to get off the Base and reach the place of his apprehension. The accused's answer reflects a clear understanding that one of the offenses about which he was to be interrogated was misappropriation of a vehicle, which facilitated his departure. In my opinion, therefore, the evidence is sufficient to justify the conclusion the accused was adequately apprised that the interrogation concerned not only unauthorized absence, but wrongful appropriation of the vehicle by which he effected his exit from the Base.

This case is substantially like United States v Davis, 8 USCMA 196, 24 CMR 6. There, the accused left his organization in Germany without authority, and crossed into Czechoslovakia, where he later made a broadcast in which he indicated he had " 'decided to desert' " the United States Army. Two years later he returned to West Germany. On his return, he was questioned by a counter intelligence agent, who read Article 31 to him " 'sentence by sentence,' " and informed him that anything he said could be used against him in a court-martial. The agent made no direct mention of desertion, one of the offenses of which the accused was later charged. Instead, he told the accused, as Sergeant Carbone did in this case, that he was interested in his activities " 'from the time he went AWOL.' " The accused made several statements which, over his counsel's objection, were admitted in evidence at his trial. Sustaining the admissibility of the statements, over the ac-

cused's objection on the ground that they were obtained in violation of Article 31 because he had not been sufficiently informed he was suspected of desertion, we said:

"In regard to the desertion charge, the evidence is also sufficient to support a finding that the accused was adequately made aware of the fact that he was at least suspected of that offense. Advice as to the nature of the charge. need not be spelled out with the particularity of a legally sufficient specification; it is enough if, from what is said and done, the accused knows the general nature of the charge. United States v Grosso, 7 USCMA 566, 23 CMR 30; United States v Johnson, 5 USCMA 795, 19 CMR 91. A partial advice, considered in the light of the surrounding circumstances and the manifest knowledge of the accused, can be sufficient to satisfy this requirement of Article 31, supra. United States v Dickenson, supra." [United States v Davis, supra, page 198.]

I would affirm the decision of the board of review.