UNITED STATES, Appellee

v

ALBERT C. FLACK, Private, U. S. Army, Appellant

20 USCMA 201, 43 CMR 41

No. 22,918

December 18, 1970

*Captain Norman L. Blumenfeld* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Monte Engler.*

*Captain Benjamin G. Porter* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain William R. Steinmetz.*

## Opinion of the Court

QUINN, Chief Judge:

We granted the accused's petition for review to consider the following question:

Whether accused's pretrial statement was rendered inadmissible by his interrogation following charges and appointment of defense counsel, without the presence or consent of such counsel. See Massiah v United States, 377 US 201, 12 L Ed 2d 246, 84 S Ct 1199 (1964).

At Warner Barracks, Bamberg, Germany, on November 9, 1968, Specialist Vincent F. Grimaldi was robbed of $250.00. A formal charge of robbery was lodged against the accused on November 16, and he was notified of the accusation the same day.

Grimaldi was about to leave Germany to return to the United States for discharge. It was, therefore, decided to take his oral deposition. A formal request for the deposition was made on November 19, but about a week earlier, Captain John F. Naughton, Judge Advocate General Corps, was advised orally that he would be appointed counsel for the accused at the taking of Grimaldi's deposition. As a result, the formal request asked that he be appointed "to represent the accused in the taking of this deposition." The Commander, 4th Armored Division, approved the request on November 19, and Naughton was appointed to represent the accused; Major Thomas H. Atkins was designated to represent the prosecution. The deposition was taken at Warner Barracks on November 21. The previous day, the accused had been interrogated by Criminal Investigations Detachment agents and had given a written statement to them. At trial, over defense objection, this

**201**

statement was admitted into evidence. The question presented by the appeal involves the correctness of this ruling.

The November 20th interview, which culminated in the making of the statement by the accused, was held at the offices of the CID in Bamberg at 1:30 or 2:10 p.m.[1] Two CID agents, Gerald R. Power and Robert V. Scara, were present. Scara had been in charge of the investigation, but apparently the case was turned over to Power, who had just returned to Germany from two months temporary duty in the United States.

At the beginning of the interview, the accused did not know about Grimaldi's deposition; neither did he know that counsel had been formally appointed on November 19, to represent him at the deposition. Agent Power did not know about the deposition; he first learned of it after the interview, either late that evening or the next morning. Agent Scara knew about "a week before" that Grimaldi was leaving Germany and that his deposition would be required. He was also "generally aware" that at depositions "both sides" would be represented by counsel, but he could not say when he learned the "actual date" of the deposition.

Preliminary to questioning the accused, Power informed him of the nature of the charges of which he was suspected and of his rights at the interview. He expressly advised the accused he had a right to consult counsel. In connection therewith, Power advised the accused as follows:

(1) He explained that counsel meant a lawyer.

(2) He advised the accused he could have counsel present with him during the questioning.

(3) He advised the accused he could retain civilian counsel at his own expense or military counsel would be appointed for him free of charge.

(4) The accused could choose his military counsel and the person selected by him would be appointed to represent him if reasonably available or other military counsel would be appointed for him.

(5) If the accused consented to being questioned without counsel present he could stop the questioning at any time to request counsel.

The accused indicated he understood his rights. He said he did not want counsel, and that he consented to being questioned. At trial, the accused admitted he received the advice indicated and that he had told Power he consented to the questioning. The accused further admitted that he understood what he was doing and that he acted voluntarily and had had no desire to remain silent during the interrogation or to exercise any of his rights to counsel and the presence of counsel during interrogation.

Initially, the accused admitted receiving four twenty-dollar bills from a coaccused, Mitchell, but he gave no indication that he knew the money was part of the amount taken in the robbery of Grimaldi. Later in the interrogation, however, he admitted his complicity in the robbery. According to Power, who conducted the questioning, the incriminating remarks were made about "an hour" after the accused first asserted innocence. Power placed the latter assertion at 2:45 p.m., which would appear to indicate that the incriminating admissions were made at 3:45 p.m. Agent Scara, who was in and out of the interrogation room several times but who was present most of the afternoon, testified that the incriminating admissions were made "somewhere around" 4:00 or 4:30 p.m.

Major Atkins arrived at the CID offices about 3:00 p.m., while the interrogation of the accused was in progress. He was working on several other cases, and also intended to ques-

---

[1] The difference in time may be accounted for by concluding that the accused reported to the Criminal Investigations Detachment office at 1:30 p.m., but the actual questioning which resulted in his statement began at 2:10 p.m.

tion Grimaldi. He needed an office. He met Scara, who allowed him to use his office. There is conflicting testimony as to whether, and when, Major Adkins was informed that the accused was being questioned by CID agents. However, it may be fairly concluded that Atkins was informed of the interrogation sometime around 3:30 p.m. Major Atkins did not then tell Scara that counsel had been appointed for the accused for the deposition; and Scara did not know Captain Naughton was to represent the accused at the deposition, until he was so informed at the deposition the next morning.

About 5:30 p.m., Major Atkins talked to Grimaldi. It occurred to him that he should have Grimaldi "identify" certain exhibits in the deposition. As a result, "shortly before supper" he talked to Scara and was informed that the accused had "made an admission and . . . they were in the process of putting it into written form." Atkins did not advise the agents that it was improper for them to talk with the accused because the Commanding General had appointed counsel for him for the deposition.

At trial, defense counsel objected to the admission in evidence of the accused's written statement of November 20, on two grounds: (1) That the accused was not properly informed that counsel had been appointed for him for the deposition; and (2) that Agents Power and Scara should be charged with knowledge of the appointment of counsel, and under paragraph 44h, Manual for Courts-Martial, United States, 1951, they could not question the accused without communicating with his counsel. The accused testified that, had he known of the appointment of counsel for the taking of Grimaldi's deposition, he would not have consented to talk to Agent Power and he would not have waived his right to consult counsel at the interrogation. The objection was overruled.

Appellate defense counsel challenge the admissibility of the pretrial statement from two standpoints. First,

they charge misconduct on the part of Major Atkins. They maintain that when a member of the prosecution "is aware" that counsel has been appointed for the accused he must, if he learns the accused is to be interrogated by police investigators, "notify both defense counsel and accused." They contend that Major Atkins knew of the interrogation in time for him to intercede and prevent its continuance before the accused had incriminated himself. They maintain that his failure to act "vitiates the confession."

Secondly, they maintain, as suggested by the granted issue, that under Massiah v United States, supra, and Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), the accused has the "right to be free from confrontations with the police at a stage in the proceedings when he may have counsel." They insist that, when the accused has an attorney, notice to the attorney of a proposed interrogation is "an absolute prerequisite" to the admission in evidence at trial of any statement obtained from the accused during the interrogation. Appellate defense counsel acknowledge that an accused can waive his right to counsel's presence at a police interrogation, but they maintain that the accused had been "misled" by not being informed that counsel had been appointed to represent him and he did not, therefore, knowingly and intelligently give up that right.

Implicit in the accused's argument is an assumption that Captain Naughton was his defense counsel. That assumption may be doubtful under the circumstances of this case. Naughton was appointed to represent the accused at the taking of Grimaldi's deposition. Counsel for one critical pretrial stage of the proceedings against the accused is not necessarily invested with the authority of a general defense counsel. It is arguable that appointment for that stage authorizes him to act only in the particular proceeding for which he is appointed. In other words, he is the attorney for a special and separate stage of proceedings, not a defense

counsel in the same sense as a lawyer who files a general appearance for the accused. Cf. *City of Chicago v Kiger*, — Ill —, — NE2d —, 8 Criminal Law Reporter 2025, decided September 29, 1970.

Obviously, if counsel at a critical stage of the proceedings is special counsel for a particular purpose, he cannot act for the accused on his own initiative at another stage and for another purpose. It would follow, therefore, that Captain Naughton's appointment for the special purpose of representing the accused at the taking of Grimaldi's deposition would not require that he be informed of an impending police interview of the accused or that he was *ipso facto* authorized to be present at the interview as the accused's counsel. This Court has held that the mere designation of a lawyer to represent an accused at the taking of a witness' deposition does not *eo instanti* establish an attorney-client relationship between the lawyer and the accused; there must be communication of the appointment to the accused and at least implied acceptance by him of appointed counsel. On that point, the Court has observed:

"There is more to creating the relationship of attorney and client than the mere publication of an order of appointment, and we have so suggested in an earlier opinion. An accused's right to a counsel of his own choice, and the necessity of a finding that he has consented to representation by appointed counsel, was recognized by this Court in *United States v Goodson*, 1 USCMA 298, 3 CMR 32, where we said: 'He (the accused) is entitled to select counsel of his own choice, and may object to being defended by the person appointed if he desires to do so.' The relationship between an attorney and client is personal and privileged. It involves confidence, trust and cooperation. Where counsel is appointed to represent one charged with an offense, the offender is entitled to protest, if the lawyer selected is objectionable to him. In the military system, if an accused has just cause for complaint against his defender, such as hostility or incompetency, he is entitled to request the appointment of other counsel. Furthermore, he is entitled to reject the services of appointed officers and employ, at his own expense, the services of civilian counsel. It may be that where an accused does not retain the services of civilian counsel, or prevail upon individual counsel to undertake his defense, or object with good cause to the representation by counsel appointed for him, he is deemed to have concurred in the appointment. However, that notion of implied consent or acquiescence is not peculiar to the military system, but is operative in every system which relies, in whole or in part, on public defenders or court-appointed counsel.

"We need not concern ourselves with that theory, however, for when it is applied to the facts in the instant case, it is at once apparent that it is not appropriate. Here we have no way of knowing whether accused was informed that he was being represented by counsel chosen by the convening authority. He could not consent if he did not know." [*United States v Miller*, 7 USCMA 23, 28, 21 CMR 149 (1956).]

If Captain Naughton had no authority to act on his own, it would appear the Government had no duty to notify him that the accused was involved in another aspect of the investigation of the charges. The only notice to which he would be entitled would be notice relative to Grimaldi's deposition. This limited obligation would be particularly true in regard to Major Atkins. His only connection with the case at the time was his appointment as the Government's representative for the Grimaldi deposition. It would appear that in the first instance the obligation to communicate the appointment to the accused and secure his approval for representation rested upon appointed counsel. This was indeed Major Atkins' belief, as indicated by his testimony that he "guess[ed] . . . [Cap-

tain Naughton would] be the only one that would know" whether he "had contacted" the accused "prior to" the accused's appearance at the CID office. Since Atkins did not know whether Naughton had ever communicated with the accused, it can hardly be concluded that he must be charged with knowledge that the accused had accepted Naughton as his lawyer, not only for the taking of Grimaldi's deposition but in a general representational sense. It is equally difficult to conclude from the circumstances present in this case that the Government had an affirmative obligation to assure itself that the accused had or had not consented to have Naughton as his counsel before it took any other action in the case.

Apart from the problem of whether an attorney-client relationship existed between the accused and Captain Naughton within the meaning of the *Miller* case, there is the question as to whether the Government was required to give counsel notice of the interrogation. It may fairly be concluded from the record that Agent Scara knew of the appointment of counsel about a half hour after Major Atkins' arrival at the CID office, although he did not know counsel's name. At this point, the accused had not yet made any incriminating statements. It would appear, therefore, that if the Government had an obligation of notice to counsel it should have acted at this time.

In *Massiah,* the Supreme Court held inadmissible in evidence statements by an accused "deliberately elicited from him" after he had been indicted, and in the absence of his counsel, without regard to whether the statements were obtained in a jailhouse interrogation or in "surreptitious interrogations" by the police or their agents. *Id.,* 377 US, at page 206. Strictly construed, *Massiah* is inapplicable to this case because the proceedings had not reached a stage equivalent to indictment. Charges had been signed by the accuser and the accused had been informed of them, but not even an Article 32 investigation had been ordered. As was noted in the concurring opinion in United States v Rodgers, 8 USCMA 226, 231, 24 CMR 36 (1957), "[u]ntil the charge sheet is actually referred to trial, it cannot be compared to an indictment in the civilian community." In any event, *Massiah* did not forbid the admission in evidence of a confession obtained from an accused under indictment because, and only because, he had no counsel present at the time he made the confession. The decision rested on the premise that the pretrial statement of the accused was inadmissible because under the circumstances of his interrogation he had to be advised that he had a right to counsel and to the presence of counsel.

It is said that United States v State of New Jersey, 405 F2d 632 (CA 3d Cir) (1969), certiorari denied, 395 US 923, 23 L Ed 2d 240, 89 S Ct 1770 (1969), construed *Massiah* to render inadmissible "all post-indictment statements obtained without counsel regardless of the circumstances." United States v DeLoy, 421 F2d 900, 902 (CA 5th Cir) (1970); Milani v Pate, 425 F2d 6 (CA 7th Cir) (1970), concurring opinion, Judge Kerner. It may be doubted that United States v State of New Jersey stands for that inflexible rule; the opinion in that case expressly noted that "a clear, explicit, and intelligent waiver may legitimate interrogation without counsel following indictment." *Id.,* at page 636. Whatever the meaning of United States v State of New Jersey, most Circuit Courts of Appeals have held that a confession by an indicted defendant taken without the presence of his counsel is still admissible in evidence if there was no "dirty pool" by the Government. United States v DeLoy, supra, at page 902. Does the failure to notify defense counsel of an interrogation, when it is known that the accused is represented by counsel, constitute dirty pool? The Court of Appeals for the Ninth Circuit in Coughlan v United States, 391 F2d 371 (1968), specifically answered this question in the negative.

**205**

In *Coughlan,* the defendant, at the time of the interrogation, was represented by court-appointed counsel, who was not informed of the interview and was not present when it was held. The court said:

"At the time the confession was obtained, the appellant was represented by court-appointed counsel. This fact was well known to the officers who interrogated the accused. No notice was given by the officers to defendant's counsel of the intended interviews and he was not present when the statement was taken.

"Under this state of the facts, appellant contends that his constitutionally guaranteed right to counsel was effectively denied. We are asked to rule that any statement, admission or confession secured by peace officers from a defendant represented by an attorney, where the attorney was not timely advised of the proposed interview or interrogation, be rejected as violative of the right to counsel. Appellant recognizes that this Sixth Amendment right may be voluntarily waived, but, at oral argument, it was contended that such a waiver would never be knowing and truly voluntary unless counsel was present to advise the client.

"It may well be that the day is approaching when the right to counsel may be expanded to the point where an accused may only be interrogated by the police in the presence of his lawyer. However, no persuasive precedent for the holding here sought has come to our attention. Appellant relies heavily on the teaching of Miranda v State of Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). *Miranda* specifically recognizes prior cases holding that the right to counsel may be waived. Here a clear and knowing waiver was shown. We are unwilling to attempt to expand the *Miranda* ruling to the extent sought by appellant.

"We, on the other hand, do not want to be considered as lending our approval to the practice, if indeed a practice exists, of interviewing accused persons in jail in the absence of counsel. The better, fairer and safer practice is to afford the defendant's attorney reasonable opportunity to be present. When this is done the heavy burden of proving a waiver of constitutionally protected rights is immeasurably eased." [*Id.,* at page 372.]

The Court of Appeals for the Tenth Circuit provided the same answer to the question as to the effect of a failure to notify counsel of an interrogation in Dillon v United States, 391 F2d 433 (1968). See also Ramsey v Cardwell, 423 F2d 715 (CA 6th Cir) (1970); United States v DeLoy, supra; Wilson v United States, 398 F2d 331 (CA 5th Cir) (1968), certiorari denied, 393 US 1069, 21 L Ed 2d 712, 89 S Ct 727 (1969).

Both before *Massiah* and after *Massiah,* this Court upheld the admission in evidence of a confession obtained from an accused known to be represented by a lawyer, even though counsel was not present during the interrogation. United States v Melville, 8 USCMA 597, 25 CMR 101 (1958); see also United States v Rogers, 14 USCMA 570, 34 CMR 350 (1964); United States v Adams, 18 USCMA 439, 40 CMR 151 (1969). The *Adams* case is particularly instructive. There, the accused selected counsel for a lineup; later he was interviewed by agents, apparently without notice to counsel. *Id.,* at page 441. The accused was fully informed of his rights at the interview in accordance with the requirements delineated in the *Miranda* case and in United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967). The Court concluded that the admission in evidence of the statement obtained in the interview was not "erroneous as a matter of law." United States v Adams, supra, at page 444. A like conclusion was reached in similar circumstances in United States v Estep, 19 USCMA 201, 41 CMR 201 (1970). There, the accused asked for counsel during interrogation. He was

allowed to consult counsel. The agent then again talked to the accused who told him that he had consulted counsel but wanted to go ahead with the interview. On appeal, the accused contended that the agent should have communicated with his counsel as required by Manual for Courts-Martial, supra, paragraph 44h. In affirming the conviction, the Court said:

> "Here, the evidence demonstrates that Chief Warrant Officer Black, preliminary to any conversation with the accused, fully informed him of the right to remain silent and the right to the presence of counsel at the interview. Black's advice complied with the requirements of threshold advice for a custodial interrogation. United States v Tempia, supra. The evidence further demonstrates that the accused told Black he had consulted with his lawyer and had been instructed not to make any statement, 'but that he still wanted to talk.' Consequently, even if we assume it was error for Black to fail to notify counsel that he proposed to reinterview the accused, it is manifest that the accused knew of his right to the presence of counsel and consented to proceed without counsel contrary to his lawyer's advice. United States v Rogers, supra. The accused's consent nullified Black's error." [United States v Estep, supra, at page 203.]

We conclude that procurement of the accused's statement was not obtained in violation of *Massiah* or the *Miranda-Tempia* requirements. Indeed, the record compels the conclusion that the accused was fully informed of his rights at the interrogation, including the right to the presence of counsel, and that he knowingly, intelligently, and voluntarily waived those rights. Accordingly, his pretrial statement was properly admitted into evidence.

The decision of the United States Army Court of Military Review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

It is indeed perplexing to me that at this late date, almost four and one-half years after the applicable date of the Supreme Court's decision in Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966) (see Johnson v New Jersey, 384 US 719, 16 L Ed 2d 882, 86 S Ct 1772 (1966); cf. United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967)), we seem reluctant to fully apply the principles of *Miranda*. In a series of analyses and rationalizations, to which I cannot subscribe, my brothers find that the accused, in this case, was fully informed of his rights concerning counsel at the interrogation, and that he knowingly, intelligently, and voluntarily waived those rights. For this reason, they hold that his pretrial statement was properly admitted into evidence. I disagree.

The issue before us is relatively simple. The offense occurred on November 9th and the accused was placed in administrative restriction the next day. A formal charge of robbery was lodged against him on November 16th. He was notified of the accusation the same day and placed in pretrial confinement on November 21st. On November 19th, the "accused's appointed defense counsel"[1] was directed to represent the accused at the taking of an oral deposition from the victim, *for the convenience of the Government,* since the victim was due to rotate to the United States on or about November 24th. Trial counsel was directed to represent the Government. The deposition was taken on November 21st with the victim, the accused, trial and defense counsel, and the deposition officer all present. However, on the previous day, November 20th, without notification to appointed defense counsel, two Army investigators interviewed the accused and, after warning him of his right to counsel in accordance with the provisions of Miranda v Arizona, supra, obtained a statement from the accused in which he admitted participating in the robbery of

[1] The actual date of this appointment is not clear in the record but it was sometime between the 16th and the 19th.

the victim. The agents denied knowing that counsel had already been appointed to represent the accused prior to the time of the interview.

At trial, defense counsel objected to the admission of the accused's statement in evidence on the ground that the accused had been interviewed without prior notification to his counsel, in violation of paragraph 44b, Manual for Courts-Martial, United States, 1951. (See also United States v Grant, 26 CMR 692 (ABR 1958); United States v DeLauder, 8 USCMA 656, 25 CMR 160 (1958).) Defense counsel asserted that had he been notified, he would have refused them permission to interview his client. The accused testified that while he consented to answer questions and stated at the time that he did not want counsel, had he known of the prior appointment of counsel by the convening authority, he would not have consented to being interviewed. It was the basic argument of the defense that since the Government, consisting of the Commanding General, the Staff Judge Advocate, and trial counsel, was aware that counsel had been appointed to represent the accused; that the agents were chargeable with this knowledge; that the agents misinformed the accused when they told him only that he had a *right* to consult counsel; that since counsel had already been appointed, they should have so informed him and asked whether he wanted consultation with his counsel before submitting to questioning; that the accused could not *voluntarily and intelligently* waive his right to counsel unless he was aware of all of the facts concerning his situation, *i. e.*, that counsel had already been appointed to advise and assist him regarding the charges. The law officer overruled defense counsel's objection on the ground that he found no evidence that the agents acted in bad faith in obtaining the statement; nor did he find anything else that would vitiate an otherwise voluntary statement on the part of the accused.

Supreme Court decisions have made it perfectly clear that an accused is entitled to the advice and assistance of counsel at *all* critical stages of the criminal proceedings. See generally, Miranda v Arizona, supra; Gideon v Wainwright, 372 US 335, 9 L Ed 2d 799, 83 S Ct 792, 93 ALR2d 733 (1963); Escobedo v Illinois, 378 US 478, 12 L Ed 2d 977, 84 S Ct 1758 (1964); Massiah v United States, 377 US 201, 12 L Ed 2d 246, 84 S Ct 1199 (1964); United States v Wade, 388 US 218, 18 L Ed 2d 1149, 87 S Ct 1926 (1967); Gilbert v California, 388 US 263, 18 L Ed 2d 1178, 87 S Ct 1951 (1967); McLeod v Ohio, 378 US 582, 12 L Ed 2d 1037, 84 S Ct 1922 (1964); 381 US 356, 14 L Ed 2d 682, 85 S Ct 1556 (1965). As the Supreme Court stated in *Wade:*

". . . The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecutions. Cf. Pointer v Texas, 380 US 400, 13 L Ed 2d 923, 85 S Ct 1065." [*Id.,* 388 US, at page 227.]

The interview of an accused, charged with robbery, by criminal investigators is obviously a critical stage in the proceedings.

In Massiah v United States, supra, the Supreme Court held inadmissible a statement of the accused obtained in the absence of his counsel. Massiah had been indicted, retained a lawyer, and was free on bail. Unaware that a co-defendant, cooperating with Government agents, had allowed the installation of a radio transmitter under the front seat of the automobile in which they were seated, Massiah made incriminating statements to the co-defendant which were overheard by a Federal agent. The use of the agent's testimony at trial, relative to this conversation, was held to violate Massiah's right to counsel under the Sixth Amendment. Cf. Escobedo v Illinois, supra.

McLeod v Ohio, supra, presents another facet of the admissibility of a statement obtained outside the presence of counsel. McLeod had been indicted for murder in the first degree on October 3, 1960. On October 11, 1960, be-

fore he procured, requested, *or was assigned counsel,* McLeod *voluntarily* made an oral confession in the presence of a deputy sheriff and an assistant prosecuting attorney while riding around in the sheriff's automobile searching for the gun used in the hold-up. The Supreme Court of Ohio, distinguishing *Massiah,* affirmed the conviction on the ground that the statement was willingly made in the known presence of public officers. There was no evidence that McLeod had, prior to confessing, been informed of his right to counsel. Without comment, the Supreme Court reversed in *McLeod* (381 US, at page 356) by memorandum opinion simply citing *Massiah.*

*Massiah* was held applicable in Clifton v United States, 341 F 2d 649 (CA 5th Cir) (1965), in a strikingly similar situation to that under consideration here. Clifton, who was then only nineteen years of age, was arrested for a state traffic violation. Three days later he was taken before a committing magistrate for a preliminary hearing on a Federal charge of the interstate transportation of a stolen automobile. Unable to post bond, he was incarcerated until the date of his trial in Federal court four months later. Counsel was appointed to defend Clifton within a month of his incarceration and visited with him in the county jail on numerous occasions.[2] Two months after the appointment of counsel, and prior to the return of an indictment, Clifton was interviewed by FBI agents, one of whom testified at trial that he advised Clifton *of his rights* at the outset of the interview. It is undisputed that the FBI agents made no attempt to determine whether Clifton had an attorney. While finding both *Massiah* and *Escobedo* factually distinguishable, the court held Clifton's statement to the FBI agents inadmissible on the basis of the rationale of those opinions. As the court said at pages 652 and 653:

"Escobedo and Massiah represent a broad indorsement by the Supreme Court of the right to have counsel present during an interrogation once the investigation has begun to focus on a particular suspect. Here this was clearly the case, for appellant had been confined to a cell for nearly three months awaiting the action of the grand jury. Hence, any interview would have been directed only to obtaining evidence to be used in prosecuting the appellant, not in ascertaining whether or not there was probable cause to believe a crime had been committed.[8] We think the interview of February 3 was a time when legal advice was critical to appellant, particularly when his age and inexperience are taken into account. In the circumstances of this case, a duty devolved upon the interviewing agents to make a reasonable effort to ascertain whether appellant had counsel and to determine whether he desired that counsel be present at the interview. It seems clear that in the instant case a reasonable inquiry would have disclosed that appellant had an attorney and that he was readily available if appellant had desired that he be present. The burden of making such an inquiry is not unreasonable where, as here, the defendant is young and obviously unschooled in the intricacies of the law and where he had been incarcerated for over two months, unable to contact his attorney at will.[9]

"While we hold that interrogating officers must make some reasonable attempt to ascertain whether such an accused has an attorney and desires that he be present, we do not reach the question of admissibility where the accused has clearly and unequivocally waived the right to consult his attorney[10] or where the accused has no attorney and has requested none after being clearly advised of his rights.[11] The record in this case discloses that the interviewing officers should have known that the accused was represented by counsel, and that they made no reasonable effort to ascertain whether

---

[2] Clifton testified at trial that he repeatedly requested persons at the jail to telephone counsel and they neglected to do so.

he desired to consult with his attorney. In the particular circumstances of this case, their failure in the above respect constitutes a denial of the guaranties of the sixth amendment. Hence, any incriminating statement made at the interview cannot be admitted into evidence at his trial.

"[8] See Lee v United States (5 Cir 1963) 322 F2d 770, 776.

"[9] Although we do not assume in this opinion that FBI agents are lawyers, we think that once the process has shifted from investigation to accusation the well-recognized practice in civil litigation serves as an appropriate analogy:

'16. COMMUNICATIONS WITH OPPOSITE PARTY.

'A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel, except in cases where opposing counsel has expressly consented to such communications or negotiations. * * *'

"American College of Trial Lawyers, Code of Trial Conduct, Canon 16. See also American Bar Association, Canons of Professional Ethics, Canon 9.

"[10] While the paper that Clifton signed contained the statement, 'I realise (sic) * * * that I have a right to an attorney,' this cannot be deemed a clear and unmistakable waiver in light of appellant's age, experience, and circumstances here evident. See Johnson v Zerbst, 304 US 458, 58 S Ct 1019, 82 L Ed 1465 (1938).

"[11] For a recent case in point, see Jackson v United States (DC Cir 1964) 337 F2d 136."

See also Queen v United States, 335 F2d 297 (CA DC Cir) (1964); Schantz v Eyman, 418 F2d 11 (CA 9th Cir) (1969).

*McLeod* was discussed at length in Hancock v White, 378 F2d 479 (CA 1st Cir) (1967), where the Court of Appeals held that the rule of *Massiah* required exclusion of that defendant's post-indictment incriminating statements, even though they were not procured by interrogation but were volunteered and the defendant was not imposed upon by any false statement, trickery, or subterfuge.

The capstone of *Massiah* and *Escobedo* was, of course, Miranda v Arizona, supra, where the Supreme Court detailed the necessity for a proper warning to an accused of his right to counsel and stated:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v Illinois, 378 US 478, 490, note 14, 12 L Ed 2d 977, 986, 84 S Ct 1758. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v Zerbst, 304 US 458, 82 L Ed 1461, 58 S Ct 1019, 146 ALR 357 (1938), and we re-assert these standards as applied to in-custody interrogation." [*Miranda,* supra, at page 475.]

In my opinion, the Government in this case has not demonstrated that this accused "knowingly and intelligently waived his privilege against self-incrimination." True enough, he was given a recitation of his right to the advice and assistance of counsel at the interview but one most important aspect of that advice was lacking—the fact that counsel had already been appointed to defend him and was at that very time on his way to the place of interrogation. The Government asserts that the investigating agents were not aware of this information and should not be held accountable for this lapse. Whether personally accountable or not, they represent the Government and as the court said in Barbee v Warden, Maryland Penitentiary, 331 F2d 842, 846 (CA (CA 4th Cir) (1964):

". . . The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure. If the police allow the State's Attorney to produce evidence pointing to guilt without informing him of other evidence in their possession which contradicts this inference, state officers are practicing deception not only on the State's Attorney but on the court and the defendant. 'The cruelest lies are often told in silence.' If the police silence as to the existence of the reports resulted from negligence rather than guile, the deception is no less damaging." [See cases cited in footnotes 9, 10, and 11, at page 846.]

Cf. Brady v Maryland, 373 US 83, 10 L Ed 2d 215, 83 S Ct 1194 (1963); Jackson v Wainwright, 390 F2d 288 (CA 5th Cir) (1968); United States v Poole, 379 F2d 645 (CA 7th Cir) (1967); Ingram v Peyton, 367 F2d 933 (CA 4th Cir) (1966).

Since the trial counsel is precluded from interrogating the accused without permission of defense counsel, once the latter has been appointed (paragraph 44*h*, Manual, supra), the same proscription should rest upon anyone involved in the investigation or trial of the case. A contrary conclusion would, in my opinion, permit circumvention of constitutional and statutory rights. In this case, the investigating agents were aware that charges had been placed against this accused as they were investigating those charges. It would have been a simple matter to determine that counsel had been appointed to defend the accused. The answer is as close as the nearest telephone. Cf. Clifton v United States, supra.

The personnel handling the case for the Government should have advised the accused at the time counsel was appointed to defend him. Again, the means is as close as the nearest telephone. The accused testified, as noted above, that such advice would have kept him from giving a statement prior to consulting counsel. A full and complete advice, clearly detailing and *tailoring* the rights to the given situation, was made mandatory in *Miranda*. See United States v Stanley, 17 USCMA 384, 38 CMR 182 (1968). Since the advice was incomplete, there can, in my opinion, be no valid waiver. This places no undue burden on the Government (Miranda v Arizona, supra) nor does it operate to subvert the judicial processes, for as the Supreme Court stated in Tehan v Shott, 382 US 406, 415, 15 L Ed 2d 453, 86 S Ct 459, rehearing denied, 383 US 931, 15 L Ed 2d 850, 86 S Ct 925 (1966):

". . . [T]he basic purposes that lie behind the privilege against self-incrimination do not relate to protecting the innocent from conviction, but rather to preserving the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution 'shoulder the entire load.' "

I cannot leave this matter without additional comment. We deal, in this case, not with a hardened criminal or a sophisticated person, but with an untutored accused, who, although twenty-three years of age, had completed only ten years of schooling. His military occupation was that of cook. On a date less than one month before the completion of his three-year enlistment he allegedly robbed another serviceman of his wallet containing approximately $250.00 in cash. Since the offenses occurred in Germany and the accused's home was in North Carolina, he was unable to look to relatives and lifetime friends for advice and assistance. His only recourse was to depend upon his military superiors.

The dependence of a serviceman on his military superiors calls for more than a strict adherence by them to rules and regulations—it presupposes a paternalistic and sympathetic interest and attitude toward one who, by reason of service to his country, has been removed by order of the Government from his relatives and friends and placed in an environment alien to his former way of life. Those concerned with military justice should be especially zealous in protecting the

rights of those servicemen who come within the purview of the court-martial system. Anything less must necessarily be viewed as an abandonment of responsibility.

On the basis of my analysis of this case, as set forth above, I would hold that the accused's pretrial statement was inadmissible in evidence. I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered.