*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

——————————

## UNITED STATES
Appellee

**v.**

## Joseph R. NELSON, Lieutenant Commander
United States Navy Reserve, Appellant

**No. 21-0216**

Crim. App. No. 201900239

Argued December 7, 2021—Decided July 22, 2022

Military Judge: Arthur L. Gaston III

For Appellant: *Major Anthony M. Grzincic*, USMC (argued).

For Appellee: *Lieutenant Megan E. Martino*, JAGC, USN (argued); *Lieutenant Colonel Christopher G. Blosser*, USMC, *Major Clayton L. Wiggins*, USMC, and *Brian K. Keller*, Esq. (on brief); *Lieutenant Colonel Nicholas L. Gannon*, USMC.

——————————

PER CURIAM.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) is hereby affirmed.

Chief Judge OHLSON filed a separate opinion, concurring in the judgment, in which Judge SPARKS and Judge HARDY joined as to Part II. Judge MAGGS filed a separate opinion concurring in the judgment, in which Senior Judge CRAWFORD joined. Judge SPARKS filed a separate opinion dissenting from the judgment. Judge HARDY filed a separate opinion dissenting from the judgment, in which Judge SPARKS joined.

## I. Overview of the Case

Appellant was charged with multiple offenses. Relevant to the issue before us, these charges included one specification of service-discrediting conduct for patronizing prostitutes in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012), and one specification of conduct unbecoming an officer for "fail[ing] to report misconduct committed by other members of the uniformed

services, including patronizing prostitutes and sex trafficking" in violation of Article 133, UCMJ, 10 U.S.C. § 933 (2012).[1]

Before trial, Appellant moved to suppress an incriminating statement he gave to agents from the Naval Criminal Investigative Service (NCIS), arguing that the agents who questioned him violated his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2018). Specifically, Appellant conceded he was properly warned that he was suspected of patronizing prostitutes, but he asserted that the Article 31(b) warning he received was insufficient to orient him to the sex trafficking offense which the NCIS agents suspected him of committing.

During the Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2018), session regarding Appellant's suppression motion, the military judge "conclud[ed] that Article 31(b) was not complied with" by the NCIS agents. As a remedy, rather than suppress the entire statement or any portion thereof, the military judge instead chose to dismiss the Article 133, UCMJ, "conduct unbecoming" charge related to Appellant's failure to report the misconduct of other servicemembers. The NMCCA affirmed on this point. *United States v. Nelson*, 80 M.J. 748, 754 (N-M. Ct. Crim. App. 2021).

This Court granted review to determine whether the military judge erred in failing to suppress for all purposes

---

[1] Appellant initially was charged with one specification of desertion in violation of Article 85, UCMJ, 10 U.S.C. § 885 (2018); one specification of making a false official statement in violation of Article 107, UCMJ, 10 U.S.C. § 907 (2018); four specifications of conduct unbecoming an officer in violation of Article 133, UCMJ; and three specifications of acts in violation of Article 134, UCMJ. One of the specifications for conduct unbecoming an officer alleged that Appellant did "wrongfully and dishonorably fail to report misconduct committed by other members of the uniformed services, including patronizing prostitutes and sex trafficking." One of the specifications alleging a violation of Article 134, UCMJ, asserted that Appellant had violated a federal sex trafficking law, 18 U.S.C. § 1591 (2012), by "patroniz[ing] a person knowing that force, fraud, and coercion . . . would be used to cause the person to engage in a commercial sex act."

Appellant's statement to NCIS that was taken in violation of Article 31(b), UCMJ.[2]

## II. Background

Appellant is an officer in the United States Navy Reserve. While on active duty and deployed in Bahrain, he patronized prostitutes and allowed prostitutes to live with him in his government quarters. On January 23, 2018, NCIS agents interviewed Appellant at the NCIS office aboard Naval Support Activity Bahrain. Before asking him any questions, the agents warned him that he had a right to remain silent. They also informed Appellant that he was suspected of violating "Article 134, which is prostitution." The NCIS agents, however, did not advise Appellant that he was also suspected of violating Article 133, UCMJ, conduct unbecoming an officer, by failing to report similar misconduct by others.

During the interview, the agents downplayed Appellant's potential criminal liability and told him that their real concern was the involvement of other servicemembers in sex trafficking. For example, one NCIS agent told Appellant: "I was really hoping that you'd be my . . . whistleblower." Appellant ultimately admitted to the NCIS agents that he patronized prostitutes and allowed prostitutes to live in his home, and that he failed to report other servicemembers' involvement with prostitutes.

Before trial, Appellant submitted three written suppression motions. In the first motion, he sought

---

[2] The assigned issue is:

> Article 31(d), UCMJ[,] requires suppression of statements taken in violation of Article 31(b). After the military judge determined that NCIS agents violated Article 31(b) because their rights advisement did not properly orient Appellant to the nature of the suspected misconduct, did the military judge err by only suppressing the statement as it related to one specific offense, but then allowing the evidence to be admitted for the remainder of the offenses?

*United States v. Nelson*, 81 M.J. 452, 452–53 (C.A.A.F. 2021) (order granting review).

suppression of his entire statement to the NCIS agents on January 23, 2018, on the grounds that the statement was "obtained through the use of coercion, unlawful influence, or unlawful inducement." The military judge denied this motion as unsupported by the "totality of the circumstances." In the second motion, Appellant sought suppression of his entire statement to the NCIS agents on the grounds that the agents had not warned him, as required by Article 31(b), that he was suspected of sex trafficking in violation of Article 134, UCMJ, and 18 U.S.C. § 1591. The military judge denied this motion, concluding that "the accused was oriented to" the Article 134, UCMJ, offenses with which he was charged, i.e., all of his own "prostitution-related misconduct." In the third motion, Appellant sought suppression of certain portions of his statement to the NCIS agents on the grounds that they were inadmissible hearsay. The military judge ruled that he would admit the challenged portions of the statement but would give instructions limiting their use.

In these three written motions, Appellant did not mention the Article 133, UCMJ, specification regarding his failure to report criminal misconduct by other servicemembers. The military judge, however, brought up this specification sua sponte in an Article 39(a), UCMJ, session during which the parties discussed Appellant's motions. The military judge asked counsel whether the NCIS agents had violated Article 31(b), UCMJ, by not warning Appellant that he was suspected of violating Article 133, UCMJ, by failing to report the misconduct of others. The military judge then heard extemporaneous arguments on this question from counsel on both sides. The military judge also asked counsel to address the appropriate remedy for the possible violation of Article 31(b), UCMJ. The military judge proposed that one remedy might be to "suppress the use of the statement with respect to that specification." The military judge suggested that another remedy might be to "dismiss the specification" if the Government did not have "any additional evidence" to prove the specification. Trial counsel agreed that suppression and dismissal "could be a potential remedy" if the military judge found that the NCIS agents had violated Article 31(b), UCMJ. Trial defense counsel agreed that "the use of the statement for that charge would be completely inappropriate."

In a subsequent written ruling, the military judge stated that "Article 31(b) was generally complied with in this case" because most of the charges were related to prostitution and the warning properly oriented Appellant to those activities. However, the military judge ruled that the warning "did not orient the accused toward the fact that his failure to report prostitution-related misconduct by other service members (a) was a crime that (b) he was suspected of." (Emphasis removed.) Therefore, the military judge ruled that Appellant's statement to the NCIS agents "may not be used to prove [the Article 133] specification against the accused." And because the Government had no other evidence to support that specification, the military judge dismissed it without prejudice.

### III. Procedural Posture

Following a contested trial on the remaining charges and specifications, a general court-martial with members found Appellant guilty of one specification of unauthorized absence terminated by apprehension (as a lesser included offense of desertion), two specifications of conduct unbecoming an officer, and one specification of patronizing prostitutes, in violation of Articles 86, 133, and 134, UCMJ. The court-martial found him not guilty of making a false official statement in violation of Article 107, UCMJ. The court-martial sentenced Appellant to forfeit $7,596 pay per month for four months and to be dismissed. The convening authority approved the findings and approved the sentence subject to certain minor adjustments to the amount of the forfeited pay not relevant here.

On appeal, the NMCCA affirmed all but one of the findings of guilt. *Nelson*, 80 M.J. at 760. The NMCCA set aside the finding that Appellant had committed conduct unbecoming an officer by making a false statement, concluding that the evidence was legally insufficient to support the finding. *Id.* at 758. After dismissing this specification with prejudice, the NMCCA reassessed the sentence, affirming only a forfeiture of $6,596 pay per month for four months and a dismissal. *Id.* at 760.

In his appeal to the NMCCA, Appellant argued that the military judge had abused his discretion by suppressing

Appellant's statements only as to the Article 133 "failure to report" specification while allowing the Government to use the statements to prove the remaining specifications. *Id.* at 754. The NMCCA disagreed, holding that "[i]f the suspect . . . makes an otherwise voluntary statement, . . . although such a statement is inadmissible as to unwarned offenses, it is admissible vis-à-vis the warned offenses." *Id.* at 753. The CCA reasoned that "to hold that Appellant's statement must be suppressed as to these warned offenses would be to confer upon him an unwarranted windfall inconsistent with public policy." *Id.* at 754.[3]

## IV. Disposition

As reflected in their respective separate opinions, three judges conclude that Appellant did not waive the assigned issue before this Court.

As also reflected in their respective separate opinions, three judges conclude that the decision of the United States Navy-Marine Corps Court of Criminal Appeals should be affirmed. Therefore, this is the holding of the Court in this case.

---

[3] In a footnote, the NMCCA reasoned that even if the military judge had erred, Appellant suffered no prejudice with respect to the findings or sentence because "failure to report the misconduct of another is not *prima facie* evidence that Appellant had [a] bad character or a criminal predisposition." *Id.* at 754 n.21.

Chief Judge OHLSON, with whom Judge SPARKS and Judge HARDY join as to Part II, concurring in the judgment.

## I. Disposition of the Case

For the reasons provided in section three of this opinion, I conclude that the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) should be affirmed. Judge Maggs and Senior Judge Crawford agree with this conclusion but on different grounds. Specifically, as reflected in the opinion authored by Judge Maggs and joined by Senior Judge Crawford, they believe that Appellant waived his argument that the military judge should have suppressed for all purposes the statement he gave to investigators. Despite these differing rationales, we three judges are in agreement regarding the proper disposition of this case. Therefore, this Court holds that the decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

## II. Waiver

For the reasons provided immediately below, I conclude that Appellant did not waive his argument that the military judge should have suppressed for all purposes the statement he gave to investigators. As reflected in their respective opinions, both Judge Sparks and Judge Hardy concur with this conclusion. Therefore, three judges of this Court are in accord that waiver does not apply in this case.

The purpose of the waiver doctrine is "to promote the efficiency of the entire justice system by requiring the parties to advance their claims at trial, where the underlying facts can best be determined." *United States v. King*, 58 M.J. 110, 114 (C.A.A.F. 2003). In this case, Appellant's suppression argument was indeed presented to, discussed at length with, and ruled on by the military judge. Therefore, in my view, waiver simply does not apply here.

Consistent with the requirements of Military Rule of Evidence (M.R.E.) 103(a)(1)(A)–(B), the record in this case shows that Appellant "timely object[ed]" to the admission of his statements to NCIS on the "specific ground" that they were obtained in violation of Article 31(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831(b) (2018). Specifically,

in a supplement to his motion to suppress, Appellant requested the "suppress[ion of] the statement made by [him] to NCIS Special Agent[s] . . . on 23 January 2018." Appellant grounded this request in Article 31(b), UCMJ, and argued that the warning given to him by the NCIS special agents was insufficient to orient him to a human trafficking charge.

In addition, during the Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2018), session at which the parties discussed this motion with the military judge:

- The Government acknowledged that one of the bases for Appellant's motion was, broadly stated, whether the NCIS agents "provide[d] . . . sufficient notice of [his Article] 31(b) rights to put the accused on notice of what he might be suspected of."
- Appellant's counsel clarified Appellant's view that the warning as to patronizing prostitutes fell "drastically short of *everything else* [NCIS] suspected him of, [of] which *the biggest concern* is the human trafficking charge." (Emphasis added.)
- The military judge indicated that he understood Appellant to be challenging the admissibility of his statements to NCIS as to all of the charges against him, noting that "the conduct unbecoming[ charges] are . . . *with one exception* . . . going to . . . activities" related to the sufficiently warned offense of "patronizing prostitutes." (Emphasis added.)[1]
- The military judge asked the parties about their "position[s] with respect to the [specification concerning] failing to report conduct committed by others under the conduct unbecoming [charge]."
- The military judge acknowledged that the argument that the NCIS agents violated Article 31(b), UCMJ, "is the argument the Defense is making with respect to

---

[1] One can deduce from the record that this "one exception" was the "conduct unbecoming" charge concerning Appellant's "fail[ure] to report misconduct committed by other members of the uniformed services" because the only other "conduct unbecoming" charge related to Appellant's activities abroad concerned "cohabitat[ing] with known prostitutes."

*everything,*" and indicated that he was considering the suppression argument in relation to each of the charges. (Emphasis added.)[2]

As can be seen then, the defense's broader Article 31(b), UCMJ, suppression argument was sufficiently "apparent from the context" of the motion for the military judge to ask the parties about it and to rule on it. M.R.E. 103(a)(1)(B). And in his ruling, the military judge made specific findings of fact

---

[2] This portion of the colloquy proceeded as follows:

> MJ: And so I—at the end of the day, I mean, I think going back to your very original question, which is could you as a remedy, if you find that to be problematic, dismiss that particular charge.

> MJ: Or essentially maybe suppress the use of the statement with respect to that specification. Then it would be up to the Government to decide whether you've got any additional evidence. And so you would dismiss the specification potentially. I guess I—

> TC: I think you have the authority in—I believe you have the authority as a potential remedy to dismiss charges in this instance because I think, if I recall, the Rule says, you know, suppression or any other appropriate remedy.

> MJ: Okay.

> TC: So I think that could be a potential remedy.

> MJ: I'm not saying I'm going to, but I did—in going through the statement, *this is the argument the Defense is making with respect to everything.*

> TC: Yes, sir.

> MJ: But *I'm less persuaded on patronizing forms of activity* that are chargeable under different charging regimes as the Government has done, like [the] sex trafficking statute or conduct unbecoming or straight [Article] 134. In terms of orienting an accused to those offenses, I'm less persuaded that he wasn't oriented to those, but *I do have a concern about the failure to report others when he's asked about that.* Okay.

(Emphasis added.)

and conclusions of law regarding the admissibility of Appellant's statement in relation to *each* charge. The military judge ultimately concluded "that Article 31(b) was not complied with" as to the charge concerning Appellant's "failure to report prostitution-related misconduct *by other service members*," but was complied with "[i]nsofar as the accused was questioned about . . . [and] charged . . . with . . . patronizing prostitutes . . . or conduct unbecoming an officer . . . due to cohabitation and public association with prostitutes."

As this Court held in *United States v. Brandell*, "Where . . . all parties at trial fully appreciate the substance of the defense objection and the military judge has full opportunity to consider it, waiver should not apply." 35 M.J. 369, 372 (C.M.A. 1992). Accordingly, I conclude that there was no waiver here.

### III. The Granted Issue

For the reasons provided immediately below, I conclude that the military judge did not abuse his discretion when he decided to dismiss only the specification as to which Appellant's statement was insufficiently warned. *See United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) ("[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range."). Because Judge Maggs and Senior Judge Crawford conclude that the waiver doctrine applies, they do not reach this issue. Further, for the reasons stated in their respective opinions, Judge Sparks and Judge Hardy disagree with my conclusion and would hold that the remedy imposed by the military judge was insufficient to cure the Article 31(b) violation. Because no set of three or more judges agrees on this point, nothing in this section of my opinion serves as precedent.

Article 31(d), UCMJ, provides that "[n]o statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial." M.R.E. 305(c)(1) similarly provides that "[a] statement obtained from the accused in violation of the accused's rights under Article 31 is involuntary and therefore

4

inadmissible against the accused." However, in certain instances where an appellant's statements were "voluntary" as to some charges but "involuntary" as to others, this Court has dismissed only the charges as to which the Article 31(b), UCMJ, warning was insufficient.

In *United States v. Reynolds*, the appellant was suspected of absence without leave (AWOL) and wrongful appropriation of another servicemember's car. 16 C.M.A. 403, 404, 37 C.M.R. 23, 24 (1966). "However, although [the investigating agent] suspected Reynolds of taking Colonel Parker's car, he did not so advise" the appellant before interrogating him, apparently telling the appellant that he was only inquiring into his activities while absent without leave. *Id.*, 37 C.M.R. at 24. Because the appellant was not warned that he was suspected of wrongful appropriation of the car, the *Reynolds* Court held "that the accused's statement was obtained without proper advice under . . . Article 31, and was, therefore, inadmissible in evidence against him." *Id.* at 406, 37 C.M.R. at 26. Importantly, however, although the Court then set aside the finding of guilty as to the wrongful appropriation charge, it did not disturb the finding of guilty as to the AWOL charge. *Id.* at 407, 37 C.M.R. at 27.

Similarly, in *United States v. Johnson*, the appellant absconded from authorized leave in Thailand "with the intent to contact the Viet Cong or North Vietnamese regulars . . . . 'and teach [them] something of Christianity and of moral responsibilities.' " 20 C.M.A. 320, 321, 43 C.M.R. 160, 161 (1971). The agent who interrogated the appellant suspected him of both (1) going AWOL and (2) attempting to make contact with the enemy. However, the agent only warned the appellant as to the first charge. *Id.* at 322, 43 C.M.R. at 162. The *Johnson* Court held that the appellant's statement "was not admissible in evidence" in light of this clear Article 31(b) violation. *Id.* at 323, 43 C.M.R. at 163. Despite this holding, however, the Court did not remand for a new trial but instead only dismissed the contact with the enemy charge "[s]ince the accused's statement . . . is the only evidence in the record relating to this offense." *Id.* at 324–25, 43 C.M.R. at 164–65. The Court in *Johnson* made no reference to the fact that the government used the appellant's own insufficiently warned statements against him in the course of prosecuting him on

5

the AWOL charge, and the Court provided Appellant no relief on those grounds.

Consistent with the approach taken by this Court in *Reynolds* and *Johnson*, and consistent with the position taken by the military judge and the NMCCA in the instant case, I conclude that when law enforcement officers suspect an accused of more than one offense but fail to adequately warn the accused under Article 31(b) of all of those offenses, it does not constitute an abuse of discretion for the military judge to dismiss only those offenses which were insufficiently warned or to suppress only those portions of the statement pertaining to the insufficiently warned offenses. In other words, I conclude that a military judge is not compelled to suppress the *entire* statement given by an accused merely because agents failed to sufficiently warn the accused under Article 31(b) of *some* of the offenses of which he was suspected.[3]

In the instant case, the military judge was presented with an interrogation in which the characterization of statements as insufficiently warned or sufficiently warned—involuntary or voluntary—depended on which charge they were used for. Rather than suppressing the entire statement, the military judge simply dismissed the charge that would have rendered the statements involuntary. Based on the facts of this case, the applicable provisions of Article 31 and M.R.E. 305, and precedents of this Court, I conclude that the military judge did not abuse his discretion in doing so. Accordingly, I conclude that the decision of the United States Navy-Marine Corps Court of Criminal Appeals should be affirmed.

---

[3] My colleague, Judge Sparks, raises a very important point: The question of whether the admission of a statement violated Article 31, UCMJ, is separate from the question of whether that statement was otherwise admissible at trial. As Judge Sparks carefully explains, in those cases where insufficiently warned statements are offered by the government, the contents of those statements may implicate the prohibition against the use of evidence of uncharged misconduct. *See* M.R.E. 404(b)(1). Therefore, the question of whether insufficiently warned statements are admissible at a court-martial must be litigated at the trial level. However, as Judge Sparks also correctly points out, the defense in the instant case did not raise at trial or on appeal the underlying M.R.E. 404(b) issue.

Judge MAGGS, with whom Senior Judge CRAWFORD joins, concurring in the judgment.

I concur in the Court's judgment because, in my view, Appellant did not make a timely request for the suppression that he now asserts the military judge should have granted. Accordingly, any argument for additional suppression was waived by operation of law under Military Rule of Evidence (M.R.E.) 304(f)(1). Because Appellant has presented no other grounds for relief, I agree that the Court must affirm the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA).[1]

## I. Waiver

As described above, Appellant argues before this Court that the military judge erred by only suppressing the statement that he made to the Naval Criminal Investigative Service (NCIS) agents on January 23, 2018, *as it related to the "failing to report" specification*, but then allowing the statement to be admitted as evidence with respect to specifications alleging other offenses. The Government responds, in part, that Appellant waived this argument by not preserving it at trial. Specifically, the Government asserts: "Appellant's suppression motions did not identify the grounds for exclusion that the Military Judge ultimately ruled on, and his consent

---

[1] Readers of the opinions in this case should take care to note how the issues have divided the Court. The Supreme Court has explained that when no opinion of the Court commands a majority, "the holding of the court may be viewed as that position taken by those [m]embers who concurred in the judgments on the narrowest grounds," *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks omitted) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)). But sometimes deciding that one opinion is narrower than another is not possible. "[O]ne opinion can be meaningfully regarded as 'narrower' than another . . . only when one opinion is a logical subset of other, broader opinions." *United States v. Davis*, 825 F.3d 1014, 1020 (9th Cir. 2016) (internal quotation marks omitted) (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991)). In this case, of the three judges who concur in the judgment to affirm, two do so based on waiver and one does so based on Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (2018). Neither of these grounds is a subset of the other. Therefore, although the Court has decided this appeal, it unfortunately has produced no holding for courts to follow in the future.

to the Military Judge's remedy was the only request for relief Appellant made with respect to those grounds."

The rules governing this appeal are not disputed. M.R.E. 304(a) provides that an "involuntary statement from the accused," which is defined to include a "statement obtained in violation of . . . Article 31," UCMJ, is "inadmissible at trial." M.R.E. 304(a)(1)(A); *see United States v. Gilbreath*, 74 M.J. 11, 18 (C.A.A.F. 2014) (addressing the application of M.R.E. 304(a) to violations of Article 31, UCMJ). M.R.E. 304(f)(1), however, provides that a failure to move for suppression of statements obtained in violation of Article 31, UCMJ, in a timely manner results in a waiver *by operation of law* of any objection to their admission. M.R.E. 304(f)(1) provides: "Motions to suppress or objections under this rule . . . must be made by the defense prior to submission of a plea. . . . Failure to so move or object constitutes a waiver of the objection." *See United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (holding that M.R.E. 304(f)(1) "is not a case where the rule uses the word 'waiver' but actually means 'forfeiture' ").

M.R.E. 103(a)(1) prescribes the method for preserving an objection to the admission of evidence, stating: "A party may claim error in a ruling to admit . . . evidence . . . if . . . a party, on the record: (A) timely objects . . . and (B) states the *specific ground*, unless it was apparent from context." (Emphasis added.) As we explained in *United States v. Datz*, 61 M.J. 37, 42 (C.A.A.F. 2005), "M.R.E. 103 does not require the moving party to present every argument in support of an objection, but does require argument sufficient to make the military judge aware of the specific ground for objection." Accordingly, to prevent waiver by operation of law under M.R.E. 304(f)(1), "the defense need only make an offer of proof and be timely and specific in raising its point." 1 Stephen A. Saltzburg et al., Military Rules of Evidence Manual § 304.02[8][a] at 3-108 (9th ed. 2020) (emphasis added); *see also* M.R.E. 304(f)(4) ("The military judge may require the defense to specify the grounds upon which the defense moves to suppress . . . evidence."). If a party fails to make the military judge aware of the specific ground for an objection, the issue is not preserved. *Cf. United States v. Perkins*, 78 M.J. 381, 390 (C.A.A.F. 2019) (finding waiver under M.R.E. 311 where a party sought suppression on appeal on a ground that was not raised below).

In this case, in the words of M.R.E. 103(a)(1), Appellant is "claim[ing] error in [the] ruling to admit" into evidence his statement to the NCIS agents on January 23, 2018. Appellant contends that this statement should have been suppressed on the specific ground that the NCIS agents did not warn him that they suspected him of the offense of conduct unbecoming an officer by failing to report the misconduct of others. The question for this Court is whether Appellant "timely object[ed]" to admission of this "evidence" on the "specific ground" that he now asserts. M.R.E. 103(a)(1). The objection would be timely if made "prior to submission of a plea" but not if made for the first time on appeal. M.R.E. 304(f)(1).

Appellant had two opportunities to preserve his suppression argument under M.R.E. 304(a). He could have preserved it either (A) in his three written suppression motions or (B) in statements that trial defense counsel made to the military judge during the session on the written motions held under Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2018). For the reasons explained below, I conclude that he did not preserve his current argument in either way. The argument therefore was waived by operation of law under M.R.E. 304(f)(1).

A. The Written Suppression Motions

In his three written suppression motions, Appellant did not argue the "specific ground" for suppression that he asserts now. As described above, Appellant's motions sought suppression of statements made to the NCIS agents on three specific grounds: (1) the statements were "obtained through use of coercion, unlawful influence, or unlawful inducement"; (2) Appellant was not warned about possible charges under 18 U.S.C. § 1591 as required by Article 31(b), UCMJ; and (3) the statements were hearsay. Nowhere in these motions did Appellant mention the "failing to report" specification. And therefore nowhere in these motions did Appellant specifically ask for suppression of any statements based on the NCIS agents' failure to warn him about this offense.

Appellant, however, argues that the NCIS agents' failure to warn him about the offense of " 'failure to report known misconduct of other service members' . . . [was] part and parcel of the defense's motion[s]" for suppression and that the

military judge recognized it as such. I agree that under M.R.E. 103(a)(1)(B), a party can preserve an objection to the admission of evidence implicitly where the nature of the objection was not explicit but "was apparent from the context." But I do not agree that Appellant, in his written motions, implicitly requested suppression of his statement to the NCIS agents on grounds that the NCIS agents failed to warn him that he was suspected of conduct unbecoming an officer in violation of Article 133, UCMJ, because he failed to report the misconduct of others.

The record makes clear that neither the military judge nor the trial defense counsel understood the three written motions to address the "failing to report" offense. During the Article 39(a), UCMJ, session, the military judge described his concerns about this offense as "new stuff" and accordingly asked Appellant if he wanted to be heard on the subject. Appellant also recognized that the subject was not raised in his written motions. Indeed, he expressly conceded that the matter "was not discussed in our motion[s]." Reviewing the written motions myself, I agree with this assessment. The "failing to report" offense accordingly was not "part and parcel" of any of the written motions.

## B. The Article 39(a), UCMJ, Session

As described above, at the Article 39(a), UCMJ, session, the military judge brought up sua sponte that the NCIS agents did not warn Appellant that they suspected him of violating Article 133, UCMJ, by failing to report the misconduct of others. The military judge proposed remedying this error by barring the Government from introducing Appellant's statement as evidence with respect to the "failing to report" specification. Appellant agreed to this remedy. But Appellant never objected to the admission into evidence of his statement to the NCIS agents with respect to any other specifications on the specific ground that the NCIS agent had not warned him that he was suspected of an offense for failing to report others.

In his brief, Appellant cites only two passages from the record of the Article 39(a), UCMJ, session in support of his claim that he preserved his objection. First, he asserts that "the prosecutor specifically acknowledged that defense wanted the entire statement suppressed, stating 'Well, the

Defense is moving to suppress the statement as a whole." But trial counsel in this passage was talking about one of Appellant's written motions to suppress. Trial counsel actually said: "Well, the Defense is moving to suppress the statement as a whole because they say that it is—I mean, they have multiple reasons why they—in their motion." At that point, the military judge interrupted trial counsel and clarified that he was asking whether he should suppress a statement only with respect to one offense if NCIS did not warn Appellant about that offense. Trial counsel responded "for the sake of argument" that the military judge's proposal would be an "adequate remedy." This statement thus provides no support for Appellant's contention that he preserved at the Article 39(a), UCMJ, session the suppression that he now seeks.

Second, Appellant discusses trial defense counsel's agreement with the military judge at the Article 39(a), UCMJ, session that " 'the use of the statement for that charge [i.e., the failing to report specification] would be completely inappropriate.' " Appellant asserts that this statement "is wholly consistent with the remedy they specifically requested" and that the "defense never backed off or changed its requested relief of suppression of the entire statement." Appellant's characterizations of these two statements are correct but they are insufficient to show that Appellant preserved the argument that he now makes on appeal. In these two statements, Appellant did not move for suppression of the entire statement on the specific ground that the NCIS agents did not warn him that he committed an offense by failing to report others. Rather, the statements show only that Appellant was consistent in asking for suppression of the entire statement on other grounds.

Appellant has not cited any other statements made during the Article 39(a), UCMJ, session in support of his argument that he preserved the issue now before this Court. Having reviewed the entire record of that session, I agree that no other statements are relevant. Appellant's present argument for suppression of evidence was thus waived by operation of law under M.R.E. 304(f)(1).

C. Waiver of the Waiver Argument

Appellant argues in his reply brief that the Government cannot assert the issue of waiver before this Court because the Government did not assert the issue of waiver before the NMCCA. In making this argument, Appellant recognizes that under the cross-appeal doctrine, this Court may allow the Government to defend a favorable judgment below on any ground even if the Government did not cross-appeal. *See United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924) (explaining this doctrine); *Perkins*, 78 M.J. at 386 n.8 (applying the doctrine); *United States v. Williams*, 41 M.J. 134, 135 (C.M.A. 1994) (same). Appellant, however, argues that application of the cross-appeal doctrine is not mandatory when an issue was neither argued nor addressed by a lower court. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 39–40 (1989) (declining to consider an argument that the respondent had not pressed before the lower courts, that the lower courts had not addressed, and that possibly would have enlarged the respondent's rights beyond what the lower court had decided). Appellant contends that allowing the Government to assert waiver in this appeal would be improper because the Government did not assert waiver before the NMCCA and indeed specifically told the NMCCA that no additional arguments beyond those in its brief were necessary for resolving the case.

Although the cross-appeal doctrine is not mandatory when a lower court has not addressed an issue, I believe that the Court should allow the Government to raise its waiver argument for four reasons. First, waiver is a fundamental restriction on appeals. " '[W]e cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal.' " *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005)). Second, the legal principles governing this case are not disputed; all agree that this case involves the application of M.R.E. 304(a) and M.R.E. 304(f)(1). Third, both parties have fully addressed the waiver argument in their briefs. Finally, applying the pertinent legal principles to these facts is straightforward even without a lower court opinion addressing them. A simple review of the joint appendix reveals that Appellant did not ask either in his written appeals or during his comments at the Article 39(a), UCMJ, session

for the suppression he now seeks on the specific grounds that
he now asserts.

## II. Conclusion

For these reasons, I concur in the judgment to affirm the
United States Navy-Marine Corps Court of Criminal Appeals.

Judge SPARKS, dissenting from the judgment, joining Judge HARDY, and joining Chief Judge OHLSON in Part II, concurring in the judgment.

Generally, for the reasons eloquently set forth in his separate opinion, I agree with the Chief Judge that Appellant did not waive his argument that the statement he gave to the Naval Criminal Investigative Service should have been suppressed for all purposes because of the Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2018), violation. More specifically, I do not believe he waived the issue of whether the military judge should have permitted the Government to use the unwarned statements as evidence on the remaining charged offenses. The military judge's dismissal of the offense for which the only supporting evidence consisted of the unwarned statements was a logical ruling. However, I believe the ultimate decision to admit the unwarned statements on the remaining offenses required an additional analytical step. When the military judge dismissed the offense of failure to report the misconduct of others, any admissions supporting that offense became admissions to, now, uncharged acts or uncharged misconduct.

As we all know, the use of such evidence is governed by Military Rule of Evidence (M.R.E.) 404(b). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." M.R.E 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." M.R.E. 404(b)(2). The threshold question in determining the admissibility of this type of evidence is whether the evidence is intrinsic, that is, inextricably related in time and place to the offenses charged or whether it is extrinsic to those offenses. *United States v. Thomas*, 11 M.J. 388, 392 (C.M.A. 1981). More modern formulations of the distinction declare that intrinsic evidence is that which is "intertwined with the commission of charged crimes." *United States v. Al-Nishiri*, 222 F. Supp. 3d 1093, 1100 (C.M.C.R. 2016) (internal quotation marks omitted) (quoting *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016)). "[I]f the evidence is of an act that is part of the charged offense, it is properly

*United States v. Nelson,* No. 21-0216/NA
Judge SPARKS, dissenting from the judgment, joining
Judge HARDY, and joining Chief Judge OHLSON
in Part II, concurring in the judgment

considered intrinsic." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000). Additionally, some uncharged acts performed contemporaneously with the charged crime may be intrinsic if they facilitate commission of the crime. *Id.* I need not, however, explore the varied formulations of the extrinsic/intrinsic distinction. It suffices to say that extrinsic evidence, unlike intrinsic evidence, must be analyzed under M.R.E. 404(b). *United States v. Green*, 617 F.3d 233, 237 (3d Cir. 2010).

It is useful then to examine what should have occurred in this case. The military judge determined that Appellant had not been properly warned as to the failure to report the misconduct of others. He dismissed the offense since the only evidence supporting it was unwarned statements elicited from Appellant during his interview. At that point, the Government, the proponent of the evidence, should have been required to inform the military judge which statements it considered as warned and which ones were unwarned. The military judge could then have made his own factual findings as to whether certain statements were in fact unwarned and whether they qualified as admissions to uncharged acts or uncharged misconduct relating to the dismissed offense. The military judge would then have determined whether any uncharged misconduct was intrinsic to the remaining charged offenses or was, as a matter of law, extrinsic evidence. If he concluded the statements were intrinsic to the charged offenses, then the statements could be admitted. If he concluded that the statements were extrinsic, then they could only be admitted if they met the requirements of M.R.E. 404(b). Otherwise, the statements were inadmissible as evidence on the remaining charged offenses.

Obviously, this issue was not raised at trial. Nonetheless, the importance of the issue demands that it be brought to the attention of future trial litigants. Likewise, one cannot in good faith conclude the military judge abused his discretion here. The Chief Judge's citations to *United States v. Johnson*, 20 C.M.A. 320, 43 C.M.R. 160 (1971), and *United States v Reynolds*, 16 C.M.A. 403, 37 C.M.R. 23 (1966), appear to indicate that for years this Court has sanctioned what I believe is

*United States v. Nelson,* No. 21-0216/NA
Judge SPARKS, dissenting from the judgment, joining
Judge HARDY, and joining Chief Judge OHLSON
in Part II, concurring in the judgment

an erroneous evidentiary procedure. As a consequence, I believe plain error has occurred in this case.

On the issue of prejudice, I am compelled to take some issue with the lower court's cursory disposal of this issue in a footnote. *United States v. Nelson*, 80 M.J. 748, 754 n.21 (N-M. Ct. Crim. App. 2021). I find curious the lower court's observation that "failure to report the misconduct of another is not *prima facia* evidence that Appellant had bad character or a criminal disposition," *id.*, particularly since the convening authority apparently felt otherwise given his referral of this very conduct to a court-martial. Nor is it clear how a prejudice determination could have been made at all in the absence of a finding as to what comprised the potentially prejudicial evidence. I agree with Judge Hardy's reasoning and conclusions, and I join his opinion and proposed resolution of the case.

To conclude, I do not believe Appellant waived the issue. Further, I cannot join the proposition that any unwarned statements were admissible in this case, without more, to prove the remaining charged offenses simply because they might have been voluntary.

Judge HARDY, with whom Judge SPARKS joins, concurring in part with Chief Judge OHLSON, and dissenting from the judgment.

I agree with Chief Judge Ohlson that Appellant did not waive his argument that the military judge should have suppressed the statement he gave to investigators for all purposes. As Chief Judge Ohlson noted, Appellant filed three timely motions to suppress his statement in its entirety, and although the military judge raised the specific issue whether the Government had warned Appellant of all of the offenses of which he was suspected sua sponte at the hearing to resolve those motions, that does not undermine the fact that the question was "presented to, discussed at length with, and ruled on by the military judge." *United States v. Nelson*, __ M.J. __, __ (1) (C.A.A.F. 2022) (Ohlson, C.J., concurring in the judgment, with whom Sparks J., and Hardy J., join as to Part II). I respectfully dissent from the Court's judgment, however, because I disagree that the remedy imposed by the military judge was sufficient to cure the Article 31(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813(b), error in this case.

## I. Discussion

Article 31(b), UCMJ, states that no person subject to the code may "interrogate . . . a person suspected of an offense without first informing him of the nature of the accusation." When that provision is violated, Article 31(d), UCMJ, provides: "*No statement* obtained from any person in violation of this article . . . *may be received in evidence against* him in a trial by court-martial." (Emphasis added.) Recognizing that a rights' advisement has particular significance in the military context, this Court has repeatedly described this provision as a " 'strict enforcement mechanism to implement the rights' warning requirements' of Article 31(b), UCMJ." *United States v. Gardinier*, 65 M.J. 60, 63 (C.A.A.F. 2007) (quoting *United States v. Swift*, 53 M.J. 439, 448 (C.A.A.F. 2000)). The President buttressed Congress's proscription against statements obtained in violation of Article 31(b), UCMJ, from being admitted into evidence in the Military Rules of Evidence (M.R.E.), which unambiguously state that when a defendant makes a timely motion or objection, such a statement "is *inadmissible at trial.*" M.R.E. 304(a) (emphasis

added); *see also* M.R.E. 305(c)(1) ("A statement obtained from the accused in violation of the accused's rights under Article 31 is involuntary and therefore inadmissible against the accused . . . .").

At trial, the military judge concluded that at least some of the admissions made by Appellant to investigators were obtained in violation of Article 31(b), UCMJ. *United States v. Nelson*, EURAFSWA Jud. Circ., slip op. at 6 (N-M. Trial Judiciary, Apr. 2, 2019) (ruling on defense motion to suppress Appellant's statements to NCIS). As the military judge astutely stated: "The government cannot lead a suspect to believe he is suspected of *x*, but is really being questioned about *y* (as opposed to *x*), and then turn around and use his resulting admissions to charge him with *y* (in addition to *x*)." *Id.* Yet that is exactly what happened in this case. The Government only warned Appellant "that he was suspected of prostitution under Article 134, UCMJ,"[1] but also suspected him of and charged him with several additional offenses.

Despite this clear violation of Article 31(b), UCMJ, the military judge denied Appellant's request to suppress his statement to the investigators. The military judge apparently concluded that—rather than suppressing Appellant's statement (even in part) as seemingly required by Article 31(d), UCMJ, M.R.E. 304(a), and M.R.E. 305(c)(1)— he could instead cure the legal error by dismissing the unwarned charges. I disagree that this was the proper remedy.

### A. Admissibility of Appellant's Statement

There is no dispute in this case that the Government violated Appellant's Article 31 rights by failing to notify him of all of the offenses of which he was suspected before they interrogated him. As summarized by the court below:

> In January 2018, NCIS special agents interviewed
> Appellant as part of a prostitution and sex trafficking

---

[1] *Id.* at 1. At the beginning of the NCIS interview, Appellant signed a "Military Suspect's Acknowledgement and Waiver of Rights" form by which he affirmed that: "I, [Appellant], have been advised by SA [GS] that I am suspected of Article 134 (Prostitution), Uniform Code of Military Justice."

> investigation in Bahrain. Although the agents provided Appellant an Article 31(b) rights advisement for patronizing prostitutes, they did not warn him that he was also suspected of failing to report the prostitution and sex trafficking-related misconduct of other Service Members.

*United States v. Nelson*, 80 M.J. 748, 751 (N-M. Ct. Crim. App. 2021). Thus, the primary question before this Court is what the military judge should have done about it.

As noted above, Congress and the President have mandated that no "statement" obtained in violation of Article 31(b), UCMJ, "may be received in evidence against [the accused] in a trial by court-martial." Article 31(d), UCMJ; *see also* M.R.E. 304(a); M.R.E. 305(c)(1). An obvious question presented by Article 31(d), UCMJ, is whether the "statement" that cannot be received into evidence is the *entire* statement given to investigators or only *the part of* that statement relating to unwarned offenses.

The Government adopts the former interpretation, arguing not only that an accused's statement to investigators can be parsed into voluntary and involuntary admissions on an offense-by-offense basis, but also boldly asserting that if a military judge dismisses the insufficiently warned charges (as the military judge did here before Appellant's court-martial), the accused's *entire statement* becomes admissible despite the seemingly contrary language of Article 31(d), UCMJ, M.R.E. 304(a), and M.R.E. 305(c)(1). To reach this conclusion, the Government relies primarily on the phrase "against him" in Article 31(d), UCMJ, apparently reasoning that, once the military judge dismissed the charges for which the Government failed to properly warn Appellant, his admissions about those offenses were no longer "evidence against" the accused. Brief for Appellee at 24–25, *United States v. Nelson*, No. 21-0216 (C.A.A.F. Nov. 17, 2021) ("Even assuming Appellant was not properly oriented to the failure to report offense, any part of his statement that was *only* relevant as [to] that offense would not require exclusion under Article 31(d) as Appellant was not charged with that crime at trial."). This argument is unpersuasive for two reasons.

First, all the evidence proffered by the Government is "evidence against" the accused or it would not be relevant at all. M.R.E. 401 states:

> Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

And M.R.E. 402(b) states: "Irrelevant evidence is not admissible." Thus, everything proffered by the government and admitted into evidence by the military judge—by definition—has a tendency to make a *consequential* fact more or less probable than it would be without the evidence. It is disingenuous for the Government to argue now on appeal that the evidence that it proffered and presented to the jury at Appellant's court-martial—over Appellant's objection—was not "evidence against" Appellant.[2]

Second, the Government's argument about the plain meaning of Article 31(d), UCMJ, only addresses the admissibility of those parts of Appellant's statement to investigators about the *unwarned* conduct. The Government appears to assume the admissibility of those parts of Appellant's statement to investigators about the *warned* conduct, but that is exactly the question that must be decided. The Government's plain language argument provides no insight into whether the word "statement" in Article 31(d), UCMJ, refers to everything Appellant said during his interview or only what he said about the unwarned offenses.

Contrary to the Government, Appellant argues that Article 31(d), UCMJ, prohibits the admission of *any* part of the statement given by an accused to investigators when there has been any violation of Article 31(b), UCMJ. Brief for Appellant at 13, *United States v. Nelson*, No. 21-0216

---

[2] Even if the Government is correct that the portions of Appellant's statement relevant to the unwarned conduct were admissible under Article 31(d), UCMJ, once the military judge dismissed those charges, I agree with Judge Sparks that those admissions would have become evidence of uncharged acts or misconduct that could only be admitted if the requirements of M.R.E. 404(b) were satisfied. *Nelson*, __ M.J. at __ (1–2) (Sparks, J., dissenting from the judgment, joining Hardy, J., and joining Ohlson, C.J., in Part II, concurring in the judgment).

(C.A.A.F. Oct. 18, 2021 ("Article 31(d) does not permit a judge to pick and choose which offenses the offending statement can be admitted to prove."). Appellant argues that the entire statement given by an accused after an insufficient rights warning is either *wholly* voluntary (and thus admissible) or *wholly* involuntary (and thus inadmissible). Although Appellant notes that Government's interpretation "would add a caveat to Article 31(d) that does not exist in its plain language," *id.* at 19, Appellant primarily supports his position with policy arguments unrelated to the specific text of Article 31(b), UCMJ, and the relevant evidentiary rules.

I cannot agree with either the Government or Appellant that the text of Article 31(d), UCMJ, is plain or obvious with respect to the scope of the word "statement." The word "statement" might reasonably mean—as the Government argues—only what the accused told investigators with respect to a specific offense, or it might reasonably mean—as Appellant argues—everything the accused said during the interview after the insufficient rights warning. The former interpretation seems to contradict this Court's insistence that Article 31(d), UCMJ, is a "strict" enforcement mechanism necessary to protect defendants in the inherently coercive military environment, *Gardinier*, 65 M.J. at 63; *Swift*, 53 M.J. at 448, but the latter interpretation undoubtedly provides a windfall to an accused who is sufficiently warned about some offenses but insufficiently warned about others. Surprisingly, considering that the language of Article 31(d), UCMJ, has remained nearly identical since it was first enacted in 1950, I can find no evidence that this Court or the Criminal Courts of Appeals have ever considered this question directly.

Relying on only two precedents from the service courts and its desire to avoid granting Appellant "an unwarranted windfall," the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) concluded that Article 31(d), UCMJ, does not require a military judge to suppress in its entirety a statement obtained by the government in violation of Article 31(b), UCMJ. *Nelson,* 80 M.J. at 754 (citing *United States v. Blanton*, No. NMCCA 2014004199, 2019 CCA LEXIS 198, at \*28, 2019 WL 2029155, at \*9–10 (N-M. Ct. Crim. App. May 8, 2019) (unpublished); *United States v. Willeford*, 5 M.J. 634, 636 (A.F.C.M.R. 1978)). In reaching this conclusion, the

NMCCA did not mention—let alone analyze—the text of Article 31(d), UCMJ, M.R.E. 304(a), or M.R.E. 305(c)(1). Indeed, it engaged in no analysis at all, apparently relying solely on the strength of the cited precedents and its view of public policy.

That reliance could not have been more misplaced because neither of the cited cases offers *a single word* of analysis on this question. The more recent case, *Blanton*, 2019 CCA LEXIS 198, at *28, 2019 WL 2029155, at *9–10, merely concluded—without citation to any precedent, statute, or rule—that the defendant's statements about the warned offenses were inadmissible, but the defendant's statements about the unwarned offense were not. Similarly, in *Willeford*, 5 M.J at 636, the United States Air Force Court of Military Review appears to have implicitly reached the same conclusion, but again without any analysis.

Chief Judge Ohlson would affirm the decision below, but he does so on alternative grounds. Chief Judge Ohlson appears to agree that Article 31(d), UCMJ, authorizes a military judge to parse a defendant's statement to investigators into voluntary (sufficiently warned) and involuntary (insufficiently warned) parts that can be admitted or excluded from evidence as appropriate. *Nelson*, __ M.J. at __ (6) (Ohlson, C.J., concurring in the judgment, with whom Sparks J., and Hardy, J., join as to Part II). Although the military judge in this case admitted Appellant's statement to investigators in its entirety—despite the confirmed Article 31 violation—Chief Judge Ohlson agrees that a court can remedy such a violation by dismissing only the charges for which the Article 31(b) warning was insufficient. *Id*. Relying on two precedents from this Court's predecessor, Chief Judge Ohlson concludes "that a military judge is not compelled to suppress the *entire* statement given by an accused merely because agents failed to sufficiently warn the accused under Article 31(b) of *some* of the offenses of which he was suspected." *Id*. I respectfully disagree that the Court of Military Appeals's decisions in *United States v. Reynolds*, 16 C.M.A. 403, 37 C.M.R. 23 (1966), and *United States v. Johnson*, 20 C.M.A. 320, 43 C.M.R. 160 (1971), mandate that conclusion.

First, in *Reynolds*, it is true that the Court only set aside one of the two findings of guilt after concluding that the investigators violated the appellant's Article 31(b) rights, but the Court provided no explanation why it imposed that specific remedy. 16 C.M.A. at 406–07, 37 C.M.R. at 26–27. The Court did not explain why the second finding of guilty for absence without leave (AWOL) in violation of Article 86, UCMJ, 10 U.S.C. § 886 (1964), could still stand, but I see no reason to assume it was because the appellant's statement was admissible with respect to that charge. To the contrary, the Court expressly stated that Article 31, UCMJ, "declares, without equivocation, that statements obtained in violation of its terms *are not to be received in evidence.*" *Id.* at 406, 37 C.M.R. at 26 (emphasis added).

In *Reynolds*, the Court gave no indication that the appellant challenged his AWOL conviction or that the statement he gave to investigators was even relevant (let alone necessary) to the appellant's conviction on that charge. Presumably, given that civilian police arrested the appellant in Roosevelt, Utah, over 800 miles from his duty station at Travis Air Force Base in California, the Government did not need the appellant's insufficiently warned statement to prove the AWOL charge beyond a reasonable doubt. Without any discussion whatsoever of these issues, I cannot agree that *Reynolds* provides any clarification about the required remedy for when an accused is properly warned about some offenses, but not about others.

In *Johnson*, the Court again faced a situation where a defendant was suspected of two crimes, AWOL and unlawfully attempting to hold intercourse with the enemy, but only warned about one—the AWOL offense—before he was interrogated by investigators. 20 C.M.A. at 321–23, 43 C.M.R. at 161–62. The appellant's counsel argued that the appellant's entire statement—Prosecution Exhibit 3—was "inadmissible" because of the investigator's failure to warn the appellant about the second suspected offense. *Id.* at 321, 43 C.M.R. at 161. Citing the text of Article 31, UCMJ, the Court agreed:

> We hold that Prosecution Exhibit 3 was not admissible
> in evidence. Article 31(b), Code, supra, 10 USC § 831,
> specifically prohibits the interrogation of, or the request

for a statement from, an accused or a person "suspected of an offense without first informing him of the nature of the accusation.' (Emphasis supplied.) No statement obtained in violation of this Article may be received in evidence against an accused in a trial by court-martial. Article 31(d), Code, supra.

*Id.* at 323, 43 C.M.R. at 163.

Like in *Reynolds*, the *Johnson* Court remedied the erroneous admission of the appellant's statement to investigators (Prosecution Exhibit 3) by dismissing the second, unwarned finding of guilty. *Id.* at 324, 43 C.M.R. at 164 ("Reversal of the accused's conviction for the offense of attempting, without authority, to hold intercourse with the enemy is required."). But also like in *Reynolds*, the Court gave no indication whether the appellant challenged his AWOL conviction or what, if any, relevance the erroneously admitted statement had to that charge. In fact, the Court's explanation of why it dismissed the second charge—because "the accused's statement, Prosecution Exhibit 3, is the *only evidence* in the records relating to this offense"—suggests that the insufficiently warned statement was *not* the only evidence with respect to the AWOL charge. *Id.*, 43 C.M.R. at 164 (emphasis added). Again, this would not be surprising, given that the appellant in *Johnson*, who was on duty with the Marine Corps in Vietnam, failed to return from his authorized rest and recreation leave, was listed as AWOL, and was apprehended by border guards in Laos. Thus in my view, *Johnson*, like *Reynolds*, fails to provide persuasive support for the NMCCA's conclusion that Article 31(d), UCMJ, does not require a military judge to suppress in its entirety a statement obtained by the government in violation of Article 31(b), UCMJ.

Without any controlling or persuasive guidance from precedent, we are back where we started with nothing more to go on than the text of Article 31, UCMJ, and the Military Rules of Evidence. Given the ambiguous meaning of "statement" in Article 31(d), UCMJ, and the dearth of any controlling precedent or direct analysis on this question from this Court, I cannot conclude that the military judge abused his discretion in admitting the portions of Appellant's statement relative to the properly warned offenses.

Nevertheless, I believe that the meaning of Article 31(d), UCMJ, is an important issue that deserves this Court's full attention in a future case.

However, the military judge's actions with respect to Appellant's statements about the unwarned offenses cannot be squared with the text of Article 31(d), UCMJ, or the rules of evidence. Regardless of the scope of the word "statement" in Article 31(d), UCMJ, that provision prohibited Appellant's admissions about the unwarned offense from being "received in evidence" during his court-martial. As noted above, the Government's insistence that those statements were not "evidence against" Appellant is baseless. If they were not "evidence against" Appellant, they would have been irrelevant and should have been excluded on that basis alone.

Furthermore, M.R.E. 305(c)(1) and M.R.E. 304(a) both expressly rendered Appellant's admissions about the unwarned offenses inadmissible. The first provision states: "A statement obtained from the accused in violation of the accused's rights under Article 31 is involuntary and therefore *inadmissible* against the accused," with limited exceptions that do not apply in this case. M.R.E. 305(c)(1) (emphasis added). Similarly, the second provision states that when an accused makes a timely motion or objection under this rule (as Appellant did in this case), "an involuntary statement from the accused, or any evidence derived therefrom, is *inadmissible* at trial," again with limited exceptions that do not apply here. M.R.E. 304(a) (emphasis added). The Government ignores these provisions, offering no explanation why they did not—on their face—render Appellant's admissions about the unwarned offense inadmissible.

It is certainly true that this Court has endorsed the dismissal of charges as an appellate remedy when the government has violated an accused's Article 31 rights. *See, e.g.*, *Reynolds*, 16 C.M.A. 403, 37 C.M.R. 23; *Johnson*, 20 C.M.A. 320, 43 C.M.R. 160. But those cases approved dismissal of charges as a post hoc remedy on appeal when the military judge had erroneously admitted an accused's involuntary statements at trial. Here, the military judge recognized the Article 31 error during a pretrial hearing where the proper remedy—exclusion of the involuntary admissions as mandated by Article 31(d), UCMJ,

M.R.E. 304(a), and M.R.E. 305(c)(1)—should have been obvious. It was clear error for the military judge to admit Appellant's admissions about the insufficiently warned charges into evidence, regardless of the military judge's dismissal of those charges. Of course, exclusion of Appellant's admissions might have *also* required the dismissal of some unsupported charges, but that dismissal in no way then converted inadmissible evidence back into admissible evidence that the Government could use against Appellant in his court-martial.

### B. Prejudice

We review the prejudicial effect of an erroneous evidentiary ruling de novo. *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019). Such an error prejudices a defendant if the error had a substantial influence on the findings. *United States v. Frost*, 79 M.J. 104, 111 (C.A.A.F. 2019). When deciding whether an appellant was prejudiced, this Court weighs: "(1) the strength of the [g]overnment's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (internal quotation marks omitted) (citation omitted)*; Kohlbek*, 78 M.J. at 334 (internal quotation marks omitted) (citations omitted).

Despite carrying the burden of proof with respect to prejudice,[3] the Government failed to present any argument in its brief with respect to the application of these four factors. Instead, the Government relied on a single precedent from this Court to argue that—even assuming an Article 31 error— Appellant was not prejudiced by the admission of his involuntary, unwarned statements. Brief for Appellee at 34– 35, *Nelson,* No. 21-0216 (C.A.A.F. Nov. 17, 2021 (citing *United States v. Cohen*, 63 M.J. 45, 54 (C.A.A.F. 2006)).

Assuming, as the military judge concluded, that Appellant's admissions about the sufficiently warned offenses were admissible, the Government's case on those offenses was

---

[3] " 'Importantly, it is the Government that bears the burden of demonstrating that the admission of erroneous evidence is harmless.' " *Frost*, 79 M.J. at 111 (quoting *United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014)).

strong and the defense was weak. The Government was able to rely almost entirely on Appellant's own admissions to prove both the unlawful cohabitation with prostitutes charge under Article 133, UCMJ, and the patronizing prostitutes charge under Article 134, UCMJ. Nevertheless, Appellant argues that he was prejudiced by the material and powerful (i.e., high quality) way in which the Government relied on the inadmissible parts of Appellant's statement.

First, when instructing the panel on how it should determine whether Appellant's conduct was unbecoming an officer under Article 133, UCMJ, the military judge instructed the members that "*all* the circumstances should be taken into consideration." Transcript of Record at 859, *United States v. Nelson*, __ M.J. __ (C.A.A.F. 2022) (No. 21-0216) (emphasis added). The Government's trial counsel reiterated this instruction during closing argument, telling the panel, "the judge instructed you that you should look at all the surrounding circumstances of what was going on and who he is, who [Appellant] is." *Id.* at 877. Without any limiting instruction about how the panel should use Appellant's involuntary admissions about the unwarned conduct, this statement expressly invited the members to use that inadmissible evidence in its deliberations.

Second, after Appellant's counsel argued during closing that the panel should not consider Appellant's statement to be reliable or competent evidence due to the problems with the interrogation, the Government's trial counsel made the following statement during rebuttal:

> And the Defense suggests that [Appellant's statement is] not legal and competent evidence. Well, Members, it is before you in this court. It has been admitted before you. It is legal and competent evidence that you should consider, *all of it*.

*Id.* at 913 (emphasis added). This statement is troubling for two reasons: Government's counsel used the fact that the military judge had (erroneously) admitted Appellant's entire statement to buttress the reliability of that statement, and he specifically instructed the jury to consider "all of it," including the involuntary admissions about the unwarned conduct.

Although these problematic uses of Appellant's involuntary admissions might not establish prejudice on their own, it was not Appellant's burden to establish prejudice. In the absence of any meaningful argument from the Government that the military judge's error was harmless, I cannot conclude that the Government carried its burden of proving that the military judge's erroneous admission of Appellant's admissions did not have a substantial influence on the findings.

## II. Conclusion

There is no dispute that the Government violated Appellant's Article 31 rights when it took his statement without warning him of all of the offenses of which he was suspected. In light of this error, the military judge abused his discretion by disregarding the plain language of Article 31(d), UCMJ, M.R.E. 304(a), and M.R.E. 305(c)(1), and admitting Appellant's involuntary admissions into evidence. Because this error prejudiced Appellant's substantial rights, I would reverse the Navy-Marine Corps Court of Criminal Appeals, set aside the findings of guilt as to Charge III, Specification I, and Charge IV, and remand to the Judge Advocate General of the Navy for further proceedings. For these reasons, I respectfully dissent from the judgment.